UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DELBERT D. WILLIAMS,

                    Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration[1],

                    Defendant.

NO:  12-CV-0203-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary

judgment (ECF Nos. 25 and 30).  Plaintiff is represented by Maureen J. Rosette.

_____

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on

February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,

Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

No further action need be taken to continue this suit by reason of the last sentence

of 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

Defendant is represented by Willy M. Le.  The Court has reviewed the
administrative record and the parties' completed briefing and is fully informed.
There being no reason to delay a decision, the hearing set for May 13, 2014 is
vacated.  For the reasons discussed below, the Court grants Defendant's motion
and denies Plaintiff's motion.

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social
Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is
limited: the Commissioner's decision will be disturbed "only if it is not supported
by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,
1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means
relevant evidence that "a reasonable mind might accept as adequate to support a
conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently,
substantial evidence equates to "more than a mere scintilla[,] but less than a
preponderance."  *Id.* (quotation and citation omitted).  In determining whether this
standard has been satisfied, a reviewing court must consider the entire record as a
whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §

404.1520(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits in October 2008, with an alleged onset date of August 3, 2007.  Tr. 162-174.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 87-90, 97-98.  Plaintiff timely requested a hearing (Tr. 101-102) and appeared with an attorney at a hearing before an administrative law judge ("ALJ") on December 28, 2010.  Tr. 41-83.

The ALJ issued a decision on January 28, 2011, finding that Plaintiff was not disabled under the Act.  Tr. 17-28.  First, the ALJ found Plaintiff met the insured status requirements for Disability Insurance Benefits through December 31, 2012.  Tr. 19.  Next, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 3, 2007, the date of Plaintiff's tragic

accident.  *Id.*  At step two, the ALJ found that Plaintiff had severe impairments, but at step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing of impairment.  Tr. 19-20.  The ALJ determined Plaintiff had the RFC to:

> perform sedentary work, as defined in 20 CFR 404.1567(b)[2] but with some modification, including lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing or walking 2 of 8 hours, sitting 6 of 8 hours, and unlimited pushing and pulling within lifting restrictions. The residual functional capacity is compromised by occasional balancing, stooping, crouching, kneeling, crawling, use of foot controls, and climbing of ramps and stairs, as well as no climbing of ladders, ropes, or scaffolds. The residual functional capacity is further compromised by environmental limitations on avoiding exposure to concentrated extreme cold, excessive vibration, unprotected heights, and using moving machinery, as well as the mental limitations of simple, routine, and repetitive tasks; occasional decision making and changes in work setting; no fast paced production requirements; and no complex verbal or written communication.

Tr. 21-26.  At step four, the ALJ found that Plaintiff was unable to perform past relevant work.  Tr. 26.  At step five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy in a representative occupation such as an unskilled sedentary job of cashier II. Tr. 26-27.  Since the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, the Plaintiff was capable of making a successful

---

[2] This appears to be a typo because sedentary is defined at subsection (a).

adjustment to other work that exists in significant numbers in the national economy, a finding of not disabled was made.  Tr. 27.

On February 23, 2012, the Appeals Council denied Plaintiff's request for review (Tr. 1-6), making the ALJ's decision the Commissioner's final decision that is subject to judicial review.  42 U.S.C. § 405(g);  20 C.F.R. §§ 404.981.

## ISSUES

Plaintiff, Delbert D. Williams, seeks judicial review of the Commissioner's final decision denying his Title II disability insurance benefits.  Plaintiff has raised three issues for review: (1) whether the ALJ provided specific and legitimate reasons to reject Dr. William Shank's opinion (ECF No. 26 at 22); (2) whether substantial evidence supports the ALJ's decision that Plaintiff did not meet a Listed impairment (*Id*. at 22-24); and (3) whether the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony (*Id*. at 24-25).  The Commissioner contends the final decision in this matter should be affirmed because it is supported by substantial evidence and contains no harmful legal error. ECF No. 30 at 20.

## DISCUSSION

**A. Examining Physician's Opinion**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

(examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201 -1202 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.*  In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists. *Id.* (citations omitted). A physician's opinion may be entitled to little if any weight, when it is an opinion on a matter not related to her or his area of specialization. *Id.* at 1203, n. 2 (citation omitted).

A treating physician's opinions are entitled to substantial weight in social security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted).  "If a treating or examining doctor's opinion is contradicted by another

1    doctor's opinion, an ALJ may only reject it by providing specific and legitimate

2    reasons that are supported by substantial evidence."   *Bayliss v. Barnhart*, 427 F.3d

3    at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)).

4           Plaintiff argues that the ALJ failed to provide specific and legitimate reasons

5    for discounting Dr. Shanks' opinion that Plaintiff "would need to avoid repetitive

6    bending, twisting, and heavy lifting because of the lumbar spine condition",

7    "would have permanent restrictions associated with the residuals of his injury",

8    and "was not capable of employment at the time."  ECF No. 26 at 21-22.   Dr.

9    Shanks examined Plaintiff in May 2009, nearly two years after Plaintiff's accident,

10   but did not treat him.  Tr. 25; 1129-36.  Dr. Shanks expressed that he had no

11   definite treatment to recommend at this time. Tr. 25; 1134.   While Dr. Shanks

12   reported instability of the left knee, limited range of motion in the left foot, good

13   smooth hip motion, and no complaints of lumbar pain.  Tr. 1133-34.  Dr. Shanks

14   opined that Plaintiff was currently unable to work because of his "significant

15   injuries" and observed that Plaintiff lacked training in light or sedentary work.  Tr.

16   25; 1135.  Dr. Shanks noted that Plaintiff avoided repetitive bending, twisting, and

17   heavy lifting.  Tr. 1135.  Dr. Shanks indicated that, with training, Plaintiff could

18   work as a picture-framer so long as he was not required to perform "heavy lifting."

19   Tr. 1135.

20          The ALJ discounted Dr. Shanks' opinion, reasoning as follows:

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

This opinion is given little weight in the determination of disability because, based on the same injuries, he finds a significantly greater degree of impairment than other equally qualified sources. Further, his statement that the claimant is not capable of working at this time is not entitled to weight, as capacity at the light to sedentary level is indicated, but the physician cites the lack of training for employment at these lesser levels of exertion. This is neither a basis for disability nor for being unable to work.

Tr. 25.  Plaintiff asserts the ALJ never identified these other "equally qualified sources."  ECF No. 26 at 22.  Plaintiff plainly overlooks the ALJ's extensive discussion of his treating physician's opinion, Dr. Howlett, another examining physician's opinion, Dr. Friedman's, and a consulting physician's opinion, Dr. Arnold.  Tr. 24-25.  Dr. Howlett, of Northwest Orthopaedic Specialists, treated Plaintiff from September 28, 2007 through May 14, 2008, at which point Plaintiff was "reaching the point of maximal medical improvement."  Tr. 24; 1154. In March 2008, Dr. Howlett recommended sedentary activity…right away.  Tr. 1056.  By May 2008, Dr. Howlett observed, "He is very motivated to go back to work including welding, and I think he can with these boots and conservative management and a custom made orthosis."  Tr. 1053.

The ALJ observed that Dr. Friedman reported Plaintiff was released to light duty on September 17, 2008, by Dr. Howlett.  Tr. 24; 1083.  Dr. Friedman notes that the only medications for pain the claimant was taking were Ibuprofen and Tylenol and stated that Plaintiff could return to work with the permanent restriction of light duty due orthopedic injuries unrelated to pain.  Tr. 24-25; 1087-88.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    The ALJ further discussed the opinions of Dr. Arnold, a medical consultant

2    (Tr. 25) and Dr. Staley, a medical consultant (Tr. 26), in formulating Plaintiff's

3    residual functional capacity assessment.

4    Plaintiff does not demonstrate with any particularity how Dr. Shanks'

5    opinion has not already been incorporated into the ALJ's RFC finding. Certainly

6    Dr. Shanks' conclusion was rejected, and for legitimate reason. For these reasons,

7    the Court finds the ALJ offered specific and legitimate reasons, supported by

8    substantial evidence, for rejecting Dr. Shanks' vocational conclusion.

9    **B. Whether Plaintiff Meets or Equals a Listed Impairment**

10   Plaintiff contends that if the ALJ had given proper weight to Dr. Shanks'

11   opinion, he "very likely would have met or equaled" the Listing at 1.02A. ECF

12   No. 26 at 22-24. In support of his argument, Plaintiff recounted Dr. Shanks'

13   examination findings that Plaintiff suffered some range of motion limitations in his

14   left leg, ankle and foot. Id. at 23; Tr. 1133.

15   Listing 1.02A is defined as a major dysfunction of a joint(s) due to any

16   cause:

17      Characterized by gross anatomical deformity (e.g., subluxation,
        contracture, bony or fibrous ankylosis, instability) and chronic joint
18      pain and stiffness with signs of limitation of motion or other abnormal
        motion of the affected joint(s), and findings on appropriate medically
19      acceptable imaging of joint space narrowing, bony destruction, or
        ankylosis of the affected joint(s). With:
20

    A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A.  The inability to ambulate effectively means "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."  20 C.F.R. pt. 404,  subpt. P, app. 1, § 1.00(B)(2)(b)(1). An example of ineffective ambulation is "the inability to walk without the use of a walker, two crutches or two canes[.]" Id. at 1.00(B)(2)(b)(2).

    Thus, Dr. Shanks' opinion does not show that Plaintiff has an impairment or combination of impairments that meets or equals Listing 1.02A.  Plaintiff reported trying to take a daily walk in good weather, going out alone and driving a vehicle independently, and occasionally doing simple grocery shopping.  Tr. 22.  His wife confirmed that he can walk a block and that he uses a cane.  *Id*.  Accordingly, substantial evidence in the record supports the ALJ's finding that Plaintiff's impairments did not meet or equal a Listed impairment.

## C. Adverse Credibility Findings

    In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. § 404.1508.  A claimant's statements about his or her symptoms alone will not suffice.  20 C.F.R. §§

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

404.1508; 404.1527.  Once an impairment has been proven to exist, the claimant

need not offer further medical evidence to substantiate the alleged severity of his or

her symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

As long as the impairment "could reasonably be expected to produce [the]

symptoms," 20 C.F.R. § 404.1529(b), the claimant may offer a subjective

evaluation as to the severity of the impairment.  *Id.*  This rule recognizes that the

severity of a claimant's symptoms "cannot be objectively verified or measured."

*Id.* at 347 (quotation and citation omitted).

In the event that an ALJ finds the claimant's subjective assessment

unreliable, however, "the ALJ must make a credibility determination with findings

sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not

arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958

(9th Cir. 2002).  In making such a determination, the ALJ may consider, *inter alia*:

(1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's

testimony or between his testimony and his conduct; (3) the claimant's daily living

activities; (4) the claimant's work record; and (5) testimony from physicians or

third parties concerning the nature, severity, and effect of the claimant's condition.

*Id.*  The ALJ "must specifically identify the testimony she or he finds not to be

credible and must explain what evidence undermines the testimony."  *Holohan v.

Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1    Plaintiff argues that the ALJ did not provide clear and convincing reasons

2    for discounting his credibility, regarding his testimony about his "limited ability to

3    sit/stand/walk/lift."  ECF No. 26 at 25.

4    Here, the ALJ thoroughly reviewed and recounted the evidence: Plaintiff's

5    wife reported that Plaintiff "performs only a small portion of the care needed by

6    their pets; experiences disturbed sleep due to pain; engages in simple food

7    preparation; attends to a small amount of light housework; but does not perform

8    yard work due to difficulty being on his feet and with lifting. The wife indicated

9    that she handles finances, but the claimant goes outside once a day, is able to go

10   out alone, drives and rides in a vehicle, and shops once a week for minor grocery

11   items. She reported that he enjoys hobbies in the form of watching television daily,

12   playing a guitar weekly, and playing Frisbee golf; socializes with family members

13   weekly, often playing board games; is independent when going out; and has no

14   difficulties relating to others."  Tr. 21-22.  His wife further explained that Plaintiff

15   "is left dominant; is able to walk a block, and then must rest 30 minutes; . . . but

16   has difficulty with lifting, walking, standing, squatting, standing, bending, seeing,

17   and climbing stairs due to physical injuries."  Tr. 22.

18   On the other hand, the ALJ found that Plaintiff himself reported:

19   living with his family, having no difficulty with personal care,
     providing part of the care for a dog, doing simple food preparation 3
20   times a day, and doing some cleaning and some laundry [Tr. 209-17].
     He reported not trying to do any yard work since being injured, trying

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

to take a daily walk in good weather, going out alone and driving a vehicle independently, and occasionally doing simple grocery shopping. In contrast to his wife, he indicated that he is able to pay bills and calculate change, and that his ability in this area has not changed since his injury. The claimant reported the daily hobbies of watching television and playing guitar, playing guitar once a week socially with others, and not needing anyone to accompany him when he goes out alone, but not going out as much as he did before. He listed difficulty with most movement, being able to lift 10 pounds, being able to walk 2 blocks and then rest 10 minutes, and being able to pay attention for 8 hours. . . He explained that the use of a cane and special shoes have been prescribed.

Tr. 22.  The ALJ recorded that at the hearing, Plaintiff testified that "he is trying to be more active, but experiences pain; that he would like to work, but as for working 8 hours a day and 5 days a week, knows he is not able to. . . The claimant also explained that Dr. Howlett said sedentary not light activity, and released him to help move along the industrial claim to get settlement going." *Id.*

The ALJ recounted the extensive medical evidence, including an October 2008 report from Craig W. Beaver, Ph.D., noting that Plaintiff "had recently been released to return to light duty work.  The claimant reported taking no medications; trying to walk daily, but not doing any formal exercise; and typically watching television and doing yard work.  He described left ankle and foot pain which is not overwhelming but never comfortable; mild intermittent back pain related to activities. . . " Tr. 23.  The ALJ then recounted the opinions of Drs. Howlett, Friedman, Arnold and Staley, as indicated above.  Tr. 24-25.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

Other than Plaintiff's conclusory testimony that he cannot work, the ALJ incorporated Plaintiff's limitations, tempered by what he reported to his treating and examining doctors, in formulating the restricted, **sedentary** residual functional capacity assessment.  Plaintiff has not demonstrated any error.

Having thoroughly reviewed the record, the Court finds that the ALJ's discounted credibility findings regarding the extent of Plaintiff's limitations is specific, clear and convincing and supported by substantial evidence.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 25, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 30, is **GRANTED**.

3. The hearing on the parties' cross-motions for summary judgment currently scheduled for May 13, 2014, is **VACATED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** September 30, 2013.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17